PEOPLE v HEILER

1. CRIMINAL LAW—JUDGES—PROSECUTING ATTORNEYS—MAGISTRATES —ABUSE OF POWER.

A circuit judge may not properly substitute his judgment for that of a magistrate or prosecuting attorney; he may reverse or revise their decisions only if it appears on the record that they have abused the power confided to them.

2. CRIMINAL LAW—PROSECUTING ATTORNEYS—NOLLE PROSEQUI—PLEA AGREEMENTS—JUDICIAL APPROVAL—STATUTES.

Trial court approval is the *sine qua non* of the decision to nolle prosequi; therefore, a prosecutor is not bound by a plea agreement that he will nolle prosequi until court approval is obtained (MCLA 767.29; MSA 28.969).

3. CRIMINAL LAW—PLEA AGREEMENTS—NOLLE PROSEQUI—JUDICIAL APPROVAL—STATUTES.

A defendant should not, prior to acceptance of a plea agreement, rely on an agreement which depends for its implementation on trial court approval of an order of nolle prosequi of a charge and a motion to add a charge because a prosecutor has no right to agree to a nolle prosequi without leave of the court (MCLA 767.29; MSA 28.969).

4. CRIMINAL LAW—PLEA AGREEMENTS—WITHDRAWAL OF PLEA AGREEMENT—REINSTATEMENT OF PLEA AGREEMENT—ABUSE OF DISCRETION—PREJUDICE.

A trial court acted improperly in ordering reinstatement of a plea agreement which was purportedly in effect for one day before being withdrawn by the prosecutor and which had not received judicial approval where there is no finding of abuse of prosecutorial discretion or of prejudice to the defendant.

Appeal from Jackson, Russell E. Noble, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 21 Am Jur 2d, Criminal Law §§ 512–519.

[3] 21 Am Jur 2d, Criminal Law §§ 514–517.

mitted October 13, 1977, at Lansing. (Docket No. 77-1527.) Decided November 22, 1977.

Jerry J. Heiler was charged with armed robbery and with possession of a firearm during the commission or attempted commission of a felony. A plea agreement was reached wherein the defendant would plead guilty to attempted armed robbery and the possession charge. The prosecutor then withdrew the plea offer. Defendant moved to reinstate the negotiated plea agreement, the motion was granted, and the plea agreement ordered reinstated. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *John L. Wildeboer,* Assistant Prosecuting Attorney, for the people.

*Parker, Adams & Engel, P. C.* (by *R. Darryl Mazur),* for defendant.

Before: DANHOF, C. J., and ALLEN and H. L. HEADING,* JJ.

DANHOF, C. J. The prosecutor appeals, by leave granted, from the May 4, 1977, order of the circuit court directing reinstatement of a plea bargain. Because this Court granted the prosecution's motion for stay of proceedings in its order granting leave to appeal defendant has not pled guilty pursuant to the reinstated bargain, but he stands ready to do so.

Defendant was charged, in a two-count information, with armed robbery, MCLA 750.529; MSA

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

28.797, and with possession of a firearm during the commission or attempted commission of a felony, MCLA 750.227b; MSA 28.424(2). After preliminary examination and pretrial conference, at which the possibility of a plea bargain was discussed,[1] an assistant prosecuting attorney who was Chief of the Jackson County Prosecutor's Trial Division contacted defense counsel and proposed a plea bargain on April 19, 1977. Under the terms of the proposed plea bargain, defendant would plead guilty to the offenses of attempted armed robbery and possession of a firearm during the commission of a felony, and would assist the police by giving them information regarding an unrelated criminal matter then under investigation, in return for the reduced charge.

On April 20, 1977, defendant agreed to the proposed plea bargain after discussing it with defense counsel, who thereupon communicated defendant's acceptance of the plea bargain to the assistant prosecutor, stating that defendant would tender his plea after defense counsel had had an opportunity to confer with defendant's parents. It was agreed that defendant would plead guilty on Friday, April 22, 1977. Before defense counsel had a chance to communicate with defendant's parents, however, on April 21, the prosecutor's office notified defense counsel that the plea offer was being withdrawn because the bargain was contrary to the prosecutor's charging policy.

The parties stipulated at the hearing on the motion to reinstate the negotiated plea that defendant had made no statement to the police in reliance upon the plea agreement prior to its withdrawal by the prosecutor. Although the trial

---

[1] The pretrial summary directed counsel to "discuss the possibility of a negotiated plea", and to complete all plea negotiations on or before May 6, 1977.

judge made no express finding of abuse of discretion by the prosecutor, nor of prejudice to defendant,[2] he thought that under *People v Reagan,* 395 Mich 306; 235 NW2d 581 (1975), "the Prosecutor must show more good faith and be held to a higher standard than someone who is in the ordinary market place". Accordingly, he ordered the plea bargain reinstated.

To assess the propriety of the trial judge's action, account must be taken of three fundamental precepts. First, as the United States Supreme Court recognized in *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), "the disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining' is an essential component of the administration of justice," *id.* at 260; 92 S Ct at 498; 30 L Ed 2d at 432, and, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled". *Id.* at 262; 92 S Ct at 499; 30 L Ed 2d at 433. Secondly, "[t]he standards of commerce do not govern, and should not govern, the administration of criminal justice", *Reagan, supra,* at 314, and once the prosecutor has pledged the public faith the court may hold him even to an unwise bargain. *Id.* 318. The judge's power to so bind the prosecutor is circumscribed, however:

"A circuit judge does not enjoy supervisory power over a prosecuting attorney. He may reverse a magistrate's decision only for abuse of discretion. He may not properly substitute his judgment for that of the magis-

---

[2] The trial judge thought that the question of whether there was prejudice to defendant was "awfully close", but stated that it would not make any difference to his decision.

trate or prosecuting attorney as if he were reviewing the magistrate's decision *de novo* or acting in a supervisory capacity with respect to the prosecuting attorney. He may reverse or revise their decisions only if it appears on the record that they have abused the power confided to them." *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974) (footnotes omitted) (hereinafter *Genesee II).*

This limitation upon the trial judge's power to control the exercise of prosecutorial discretion is founded upon the doctrine of separation of powers. *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 684; 194 NW2d 693 (1972) (hereinafter *Genesee I), Genesee II, supra,* at 121, *People v Stewart,* 52 Mich App 477, 483 n 7; 217 NW2d 894 (1974), *lv den,* 396 Mich 831 (1976). "Even, as in Michigan, when the judge may veto[3] the prosecutor's decision to nolle prosequi, he lacks the power to dismiss on his own motion over prosecutorial objection." *People v Stewart, supra,* at 483. The court's statutory power to veto the prosecutor's decision to discontinue a criminal proceeding,

"was not meant to significantly impair the common-law rule that only the prosecutor could exercise the power to enter a nolle prosequi. Rather, the statute was enacted primarily to protect defendants by not allowing prosecutors to exercise this power unless the reasons therefor were stated on the record and leave of the court was obtained and recorded. While the statute, by requiring the trial court's permission, does effect some infringement on the prosecutor's exclusive common-law power, the initial decision as to whether or not to enter a nolle prosequi nevertheless remains an executive

---

[3] MCLA 767.29; MSA 28.969 provides such authority: "It shall not hereafter be lawful for any prosecuting attorney to enter a nolle prosequi upon any indictment, or in any other way to discontinue or abandon the same, without stating on the record the reasons therefor and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes."

function and a part of the duties of the prosecutor."
*People v Nelson,* 66 Mich App 60, 64; 238 NW2d 201
(1975).

Whether the trial judge's action in reinstating
the plea bargain in this case is viewed as analo-
gous to an amendment of the information to in-
clude a lesser offense not charged, a practice disap-
proved in *Genesee Prosecutor I, supra,* or as a
judicial dismissal not based on a lack of evidence,
as in *Stewart, supra,* and *Nelson, supra,* he acted
improperly unless the prosecutor can be said to
have abused his discretion by withdrawing from
the plea agreement.[4] Although *People v Reagan,*
*supra,* upon which the trial judge relied in con-
cluding that "when a bargain is struck, it should
be in good faith and upheld on both sides", does
refer to a "pledge of public faith", a breach of
which might constitute an abuse of discretion, it is
clear from a close reading of the *Reagan* opinion
that the bargain there was not binding until *after*
the trial court approved the order of nolle prose-
qui:

"We conclude that the prosecutor's office, in entering
into the agreement with defendant, gave a pledge of
public faith *which became binding when the nolle
prosequi order was approved by the trial judge."
Reagan, supra,* at 309 (emphasis added).

[4] Since defendant has not yet tendered his guilty plea or performed
any part of the plea agreement, he does not seek the remedy of
specific enforcement of the agreement, as in *Santobello, supra, People
v Shipp,* 68 Mich App 452, 456–457; 243 NW2d 18 (1976), and *People
v Eck,* 39 Mich App 176; 197 NW2d 289 (1972). In each of those cases
specific performance, or the alternate remedy of plea withdrawal, was
available only after the plea had been accepted, defendant had acted
to his prejudice in reliance upon the agreement, and the prosecutor
had thereafter refused to perform its part of the bargain; *Santobello*
and its progeny do not involve court compelled performance of a
tentative agreement from which the prosecutor has withdrawn prior
to judicial approval.

"The approval or lack of approval of the agreement by the trial court was not viewed as determinative under Florida law which does not require judicial approval of nolle prosequi. (Citations omitted.) Michigan law does require judicial approval. *See* MCLA 767.29; MSA 28.969, cited above. *Lack of judicial approval when such is statutorily required has been said to nullify the effect of purportedly dispositional agreement between the prosecution and a defendant.*" *Id.* 316 n 13 (emphasis added).

"In Michigan, a trial court approval is the *sine qua non* of the decision to nolle prosequi." *Id.* 317.

"Under the facts of this case, however, entry of the order of nolle prosequi was by its presence *the final act of fruition of a binding agreement.*" *Id.* 318 (emphasis added).

"In our view, a pledge of public faith in this instance gave force to an unwise agreement *which became binding upon trial court approval of nolle prosequi.*" *Id.* (emphasis added).

Accord, *People v Shipp,* 68 Mich App 452, 457; 243 NW2d 18 (1976) ("defendant's performance of his part of the agreement made it binding on the prosecutor's office.").

Thus, even under the *Reagan* rule, his pledge of public faith nothwithstanding, the prosecutor is not bound by his unwise agreement until *after* trial court approval thereof coincident to entry of an order bringing the agreement to "fruition". Similarly, in *People v Ciatti,* 17 Mich App 4, 7–8; 168 NW2d 902 (1969), this Court noted that "Since defendant's counsel should know that a prosecutor has no right to enter a *nolle prosequi* of a case without leave of the court (citation omitted), *defendant's attorney could not rely on any agreement with the prosecutor as a reason for being unprepared".* (Emphasis added.) By the same token, defense counsel in this case had no more right to rely on the plea agreement prior to its

approval by the trial judge, since its implementation would have required trial court approval of an order of *nolle prosequi* for the armed robbery count and a motion to add the attempt count.

Balanced against the non-binding, but nevertheless broken, pledge of public faith are two additional considerations that we believe lead to a different result here than in *Reagan.* First, defense counsel stipulated that defendant had performed no act in reliance upon the agreement that might prejudice his defense. The loss of the one-day period that the agreement was purportedly in effect is not alleged to have prejudiced defendant in the preparation of his defense, nor did defendant make any inculpatory statements that might be used against him to the police in reliance upon and compliance with the terms of the agreement. In contrast, in *Reagan* defendant had submitted to a polygraph test, a potentially prejudicial factor that the Court took into account in arriving at its decision. *Reagan, supra,* at 314 n 10. In the absence of any showing whatsoever of prejudice to defendant stemming from the prosecutor's breach of the tentative agreement, a second factor tips the balance:

"For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers. Const 1963, art 3, § 2. *It also violates our fundamental sense of fair play." Genesee I, supra,* at 684 (emphasis added).

Although we do not condone the conduct of the prosecutor's office in this case, neither do we think it proper, in the absence of a finding of abuse of prosecutorial discretion and resultant prejudice to

defendant, for the trial judge to undertake to impose upon the prosecutor an agreement with terms he believes to be unwise. Such agreements are not binding upon the prosecutor, in the absence of prejudice to a defendant resulting from reliance thereon, until they receive judicial sanction, anymore than they are binding upon defendants (who are always free to withdraw from plea agreements prior to entry of their guilty plea regardless of any prejudice to the prosecution that may result from a breach). To hold the prosecutor bound by the agreement under the circumstances outlined above would, we believe, actually inhibit the dispositional use of plea bargaining by placing the prosecutor at an absolute disadvantage. This, too, violates our fundamental sense of fair play. Absent any showing or allegation of prejudice to the defense resulting from the prosecutor's breach of faith, we decline to permit judicial intrusion upon the function of his office.

The ruling of the trial judge granting defendant's motion to reinstate the plea bargain is reversed and this case is remanded for further proceedings under the unamended information consistent with this opinion.