#26317-rev & rem-DG

**2013 S.D. 40**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                           Plaintiff and Appellee,

v.

TRAVIS LONG FOX,                                 Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
SULLY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN L. BROWN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                         Attorneys for plaintiff
                                             and appellee.


AL ARENDT
Pierre, South Dakota                         Attorney for defendant
                                             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 8, 2013

OPINION FILED **05/29/13**

#26317

GILBERTSON, Chief Justice

[¶1.] While intoxicated, Travis Long Fox stole a vehicle, drove the vehicle into a ditch, and then fled the scene of the accident. The State brought various charges against Long Fox, including grand theft. Long Fox entered into a "Deferred Prosecution Agreement" (the Agreement) with the State, in which the State agreed to defer prosecution of the grand theft charge if Long Fox pleaded guilty to other charges and complied with additional conditions for a period of 24 months. One of the conditions required Long Fox to plead guilty to grand theft if he violated any of the other conditions of the Agreement. A few months into the 24-month period, Long Fox violated some of the conditions of the Agreement. As a result, the State re-filed the grand theft charge against Long Fox. Long Fox then filed a motion to exercise his right to a jury trial, which the circuit court denied based upon the terms of the Agreement. Ultimately, Long Fox pleaded guilty to grand theft and was sentenced. Long Fox appeals the circuit court's denial of his motion to exercise his right to a jury trial on the grand theft charge.

## FACTS

[¶2.] On August 15, 2010, 18-year-old Long Fox stole a car, drove the car off of the road and into rural fence lines, and got the car stuck in a ditch. He then fled the scene of the accident. Subsequently, a police officer was called to the scene. Witnesses at the scene told the officer that Long Fox admitted he took the car and got it stuck in the ditch. Upon learning that Long Fox was staying at a friend's residence, the officer contacted Long Fox's friend and received permission to enter

-1-

the residence in order to apprehend Long Fox. When the officer entered the home, he located Long Fox, placed him in custody, and read him his Miranda rights.

[¶3.] Long Fox waived his rights and agreed to speak with the officer. Long Fox admitted he had taken the car and wrecked it. He also admitted he had consumed alcohol before driving the car. Additionally, Long Fox admitted he had previously stolen a tractor battery from a neighbor's tractor in an incident unrelated to the theft of the vehicle.

[¶4.] On August 18, 2010, Long Fox was charged with grand theft, in violation of SDCL 22-30A-17; reckless driving, in violation of SDCL 32-24-1; failure to report an accident, in violation of SDCL 32-34-7; minor in consumption, in violation of SDCL 35-9-2; and petty theft, in violation of SDCL 22-30A-17.3. An amended complaint was filed on September 1, 2010, which added charges of possession of marijuana, in violation of SDCL 22-42-6, and ingestion, in violation of SDCL 22-42-15, to the list of charges being brought against Long Fox. Long Fox was arraigned on these charges on September 22, 2010, and he entered a plea of "not guilty" to all charges.

[¶5.] On October 6, 2010, Long Fox appeared before the magistrate court and entered into the Agreement with the State. The Agreement was signed by the magistrate judge. As part of the Agreement, the State agreed to defer prosecution of the grand theft charge for 24 months if Long Fox complied with certain conditions. One of these conditions was that Long Fox plead guilty to reckless driving, ingestion, and failure to report an accident. In exchange for pleading guilty to these charges, the State would dismiss the possession, minor in consumption, and

petty theft charges with prejudice. The Agreement also contained other conditions, including that Long Fox participate in the 24/7 program, not consume or possess alcohol or controlled substances, pay restitution to the owner of the car and the owner of the fence, and provide a factual basis for the grand theft charge within the Agreement, which would be used against him if the grand theft charge was re-filed.

[¶6.] According to the terms of the Agreement, if Long Fox complied with the conditions for 24 months, the State would file a dismissal of the grand theft charge with prejudice. However, if Long Fox violated any of the conditions, the grand theft charge would be re-filed and Long Fox would plead guilty to grand theft. By signing the Agreement, Long Fox acknowledged that he understood his rights, the nature of the charges against him, the maximum penalties that could be imposed for his offenses, and the rights he waived by pleading guilty. Further, Long Fox acknowledged that he entered into the Agreement freely and voluntarily. After pleading guilty to reckless driving, ingestion, and failure to report an accident in accordance with the terms of the Agreement, Long Fox was placed on probation.

[¶7.] Months after entering into the Agreement, Long Fox violated the conditions of his probation and of the Agreement. Specifically, Long Fox tested positive for marijuana on January 13, 2011, and he missed his preliminary breath test on April 21, 2011. Additionally, on July 15, 2011, Long Fox attempted to provide a false urine sample to law enforcement and then tested positive for marijuana. As a result of Long Fox's violation of the conditions of his probation and of the Agreement, the State re-filed the grand theft charge against Long Fox. The State also moved to revoke Long Fox's probation and its deferment of prosecution of

the grand theft charge. On October 19, 2011, Long Fox moved to exercise his right to a jury trial. The circuit court denied this motion, ruling that Long Fox was contractually bound by the terms of the Agreement, which required him to plead guilty to grand theft if he violated the conditions of the Agreement.[1]

[¶8.] A hearing was scheduled for November 9, 2011, to address the State's motion to revoke Long Fox's probation and its deferment of prosecution of the grand theft charge. At the hearing, Long Fox admitted to violating the conditions of his probation and of the Agreement. Long Fox was then re-arraigned on the grand

---

1. At the October 26, 2011 hearing on Long Fox's motion to exercise his right to a jury trial, counsel for Long Fox argued:

> [The] Deferred Prosecution Agreement . . . seeks to force him – and the thing is, you know, every one of us, particularly you [the judge], sit in court every day and ask people, Did anybody force you to plead to this charge? And that's exactly what's going to happen in this case because the State is asking that this Defendant be forced to plead to grand theft. And at a minimum, I think it is a violation of his constitutional right to a jury trial. And the fact that it was put in [the Agreement], it was agreed to with counsel at [his] side, does not in any way somehow diminish the constitutional violation. . . . I don't see how you can force somebody to stand up and plead guilty and find them guilty when he says I'm not guilty and I'm being forced to plead guilty because of this agreement.

However, the circuit court ruled:

> I find from the agreement that Mr. Long Fox was adequately advised of the circumstances that he was entering into in this matter. He did plead to various misdemeanor charges, was granted the opportunity to avoid entering a plea on the grand theft charge based on the conditions that he comply with the terms of that agreement. Now certainly he's entitled to a hearing on whether in fact he has violated the terms of that agreement. But I think under the terms of the agreement, it's quite clearly set out that he's agreed that he will plead guilty to the grand theft charge.

theft charge. Despite his desire to plead not guilty and exercise his right to a jury trial on the grand theft charge, Long Fox reluctantly pleaded guilty to grand theft in accordance with the terms of the Agreement. Long Fox was sentenced on February 13, 2012. The circuit court imposed a jail term of 5 years, with all but 60 days suspended if Long Fox complied with certain conditions. Long Fox appeals the circuit court's denial of his motion to exercise his right to a jury trial on the grand theft charge.

## ANALYSIS AND DECISION

[¶9.]      **Whether the circuit court erred in denying Long Fox's motion to exercise his right to a jury trial on the grand theft charge.**

[¶10.]      Long Fox argues the portion of the Agreement requiring him to plead guilty to grand theft was unconstitutional because it forced him to plead guilty to grand theft at a later arraignment if he violated the conditions of the Agreement.[2] Thus, Long Fox asserts the circuit court erred in denying his motion to exercise his right to a jury trial on the grand theft charge and instead enforcing the portion of the Agreement requiring him to plead guilty to grand theft because that portion of the Agreement was unconstitutional.

[¶11.]      "Alleged violations of constitutional rights are reviewed de novo." *State v. Zakaria*, 2007 S.D. 27, ¶ 8, 730 N.W.2d 140, 143 (citing *State v. Carothers*, 2005 S.D. 16, ¶ 7, 692 N.W.2d 544, 546). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395

---

2.      Long Fox does not challenge the validity of the Agreement as a whole.

U.S. 238, 242, 89 S. Ct. 1709, 1711-12, 23 L. Ed. 2d 274 (1969) (citing *Kercheval v. United States*, 274 U.S. 220, 223, 47 S. Ct. 582, 583, 71 L. Ed. 1009 (1927)). Thus, with regard to guilty pleas:

> It is beyond dispute that a guilty plea must be both knowing and voluntary. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination.

*Parke v. Raley*, 506 U.S. 20, 28-29, 113 S. Ct. 517, 523, 121 L. Ed. 2d 391 (1992) (internal citations and quotation marks omitted). *See also Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1969) (stating that a plea must be a "voluntary expression of [the defendant's] own choice").

[¶12.] In this case, we conclude that the portion of the Agreement requiring Long Fox to plead guilty to grand theft, which encompassed Long Fox's waiver of his right to a jury trial,[3] is unenforceable. After Long Fox admitted to violating the conditions of his probation and of the Agreement, Long Fox was re-arraigned on the grand theft charge. Although Long Fox agreed to plead guilty to grand theft if he failed to satisfy the conditions of the Agreement, Long Fox should have been able to withdraw from the portion of the Agreement related to the grand theft charge until

---

3.  In the Agreement, Long Fox's waiver of his right to a jury trial was explicitly linked to the portion of the Agreement requiring Long Fox to plead guilty to grand theft. First, the Agreement provided that "if [Long Fox] violates any condition . . . , he shall enter a plea of guilty to the Grand Theft charge." In a later provision, the Agreement provided that "Defendant understands that if his plea of guilty to any count or counts is accepted by the [circuit court], he waives" his right to a jury trial. Long Fox did not separately waive his right to a jury trial.

he entered a guilty plea on that charge. *See* Wayne LeFave, et al. 5 *Crim. Proc.* §
21.2(f) (3d ed. 2007) (quoting *People v. Heiler*, 262 N.W.2d 890, 895 (Mich. Ct. App.
1977)) (stating that defendants "are always free to withdraw from plea agreements
prior to entry of their guilty plea regardless of any prejudice to the prosecution that
may result from a breach"). However, despite Long Fox's desire to maintain his
plea of not guilty and exercise his right to a jury trial on the grand theft charge,
Long Fox was forced to plead guilty to grand theft under the terms of the
Agreement.[4]

[¶13.]     Therefore, in this case, Long Fox never voluntarily, of his own choice,
entered a plea of guilty to grand theft. As a result, we conclude that the portion of
the Agreement requiring Long Fox to plead guilty to grand theft is unenforceable

---

4.     At the November 9, 2011 hearing, the circuit court ruled that Long Fox
       violated the conditions of the Agreement. The court proceeded to arraign
       Long Fox on the grand theft charge. After Long Fox was read his rights, the
       following exchange took place:

       **The Court:** I understand that this particular charge was
       deferred as the result of a Deferred Prosecution Agreement
       entered into with the State. Part of the . . . Agreement . . .
       would constitute your agreement that you would enter a guilty
       plea to the charge. And you understand the effect of the . . .
       Agreement you entered into and where that puts you today in
       this case?
       **Long Fox:** Yes, Your Honor.
       **The Court**: Then at this time, are you ready to enter a plea?
       **Counsel for Long Fox**: Judge, we are, but it was our intent to
       plead not guilty today. But you know, . . . you ruled . . . that he
       is bound by the agreement that he made . . . and it provides . . .
       that he agrees that if this is revoked, he pleads guilty to grand
       theft. I mean, is that to mean he has to plead guilty today?
       **The Court**: Well, I guess this is the time for the arraignment.
       I would assume that he would be bound by the terms of that
       agreement.

because it unconstitutionally deprived Long Fox of his right to voluntarily enter his choice of plea on the grand theft charge. Further, because the portion of the Agreement requiring Long Fox to plead guilty to grand theft is unenforceable, the circuit court erred in determining Long Fox was bound by that portion of the Agreement and in subsequently denying Long Fox's motion to exercise his right to a jury trial.

[¶14.]      In reaching this conclusion we note that neither party cites to any provision in the South Dakota Codified Laws or any caselaw that contemplates the enforcement of an agreement in which a defendant gives up his right to voluntarily enter a plea of his or her choice. Although SDCL 23A-7-8 discusses plea agreements, SDCL 23A-27-12 discusses probation, SDCL 23A-27-13 discusses suspended impositions of sentences, and SDCL 23A-27-18 discusses suspended executions of sentences, none of these statutes[5] contemplate the portion of the Agreement the State and Long Fox entered into in which Long Fox was required to plead guilty to grand theft upon violating the conditions of the Agreement, thus waiving his right to a jury trial.

[¶15.]      We reverse and remand for proceedings consistent with this opinion.

[¶16.]      ZINTER and SEVERSON, Justices, concur.

[¶17.]      KONENKAMP, Justice, concurs in result.

[¶18.]      WILBUR, Justice, deeming herself disqualified, did not participate.

---

5.    Various conditions must be satisfied before these procedures can be utilized. One specific condition required under each of these statutes is that the defendant must have been convicted of, or pleaded guilty or nolo contendere to the charge before any of these procedures can be implemented.

KONENKAMP, Justice (concurring in result).

[¶19.] Although the Court holds unenforceable only a portion of the felony deferred prosecution agreement here, there is also a jurisdictional defect. As part of this agreement, the factual basis for the felony of grand theft was offered and accepted in magistrate court. It is doubtful whether a magistrate judge has jurisdiction to accept or approve felony plea agreements of any sort. With felonies, magistrate judges are limited to setting bail, assigning counsel, advising rights, holding preliminary hearings, and, in certain instances, taking "not guilty pleas," but then only when directed to do so by the presiding judge. SDCL 23A-6-29.1; SDCL 23A-4-3. If magistrates cannot accept a felony guilty plea, how can they accept or approve a factual basis for a felony guilty plea as part of a deferred prosecution agreement?

[¶20.] More than anything, however, today's case illustrates the void in our law governing deferred prosecutions. While we know they exist — this was but one instance — deferred prosecution agreements in South Dakota have no standards, no guidelines for eligibility, and no formalized procedures authorized by legislation. They operate informally and purely at prosecutorial discretion. Nonetheless, when these agreements are legally sanctioned and properly managed, other jurisdictions have found them to be of considerable merit.[6]

---

6.  "[M]any jurisdictions have now adopted programs variously called pretrial diversion, pretrial intervention, or deferred prosecution for the purposes of conserving scarce prosecutorial and judicial resources and of dealing more

(continued . . .)

[¶21.]       Not to be confused with deferred prosecution, South Dakota presently has several other complementary programs.  One is the 24/7 Sobriety Program overseen by the Attorney General.  SDCL ch. 1-11.  Participation may be a condition of bond or pretrial release or a sentence.  SDCL 1-11-20.  Another is the Adult Probationary Drug Court Program.  SDCL 16-12B-14.1.  These programs have a distinctive difference from deferred prosecution: the locus of control over the case process.  Deferred prosecution programs tend to be prosecution based, whereas Drug Courts and the 24/7 Sobriety Program are court-centered.[7]  Our recently enacted Public Safety Improvement Act, 2013 S.D. Sess. Laws ch. 101, addresses mostly post-conviction reforms.

[¶22.]       Deferred prosecution programs help reduce criminal caseloads and incarceration rates and "assist the courts, prosecutors, and victims in addressing serious problems caused by growing criminal and juvenile justice populations through reducing reliance on traditional case processing and working to stem the 'revolving door' syndrome."  National Association of Pretrial Services Agencies

---

(. . . continued)
        effectively with certain offenders."  Wayne LaFave, *et al.*, 4 Crim. Proc. §
        13.6(a) (3d ed. updated 2012).

7.      This is not to suggest that courts should have no role.  "While it is the
        prosecutor's prerogative to initiate pretrial diversion consideration for
        potential participants, courts should have a role in monitoring the fair
        application of diversion eligibility guidelines."  NAPSA Performance
        Standards and Goals for Pretrial Release and Diversion 1995, Standard 2.6,
        available at http://projectremand.org/pdf/diversion1995.pdf (last visited on
        May 17, 2013).

#26317

(NAPSA), Pretrial Diversion Abstract (January 1998).[8]  For those charged with public offenses, such programs provide "an opportunity to make significant changes in their lives and prevent further penetration into the criminal justice system."[9]  *Id.*

[¶23.]        According to the NAPSA, pretrial diversion or deferred prosecution is defined as "any voluntary option that provides alternative criminal case processing for a defendant charged with a crime and ideally results in a dismissal of the charge(s)."[10]  In the model established by NAPSA, these diversion programs feature: "(1) uniform eligibility criteria; (2) structured delivery of services and supervision; and (3) dismissal — or its equivalent — of pending criminal charges upon successful completion of the required term and conditions of diversion."[11]  Unsuccessful participants are returned for prosecution.

---

8.    *See* http://www.napsa.org/publications/diversionabstract.pdf (last visited on May 17, 2013).

9.    The NAPSA recognizes 298 pretrial diversion programs in 45 states, the District of Columbia, and the U.S. Virgin Islands.

10.   *See* Promising Practices in Pretrial Diversion, 5. http://www.pretrial.org/Docs/Documents/PromisingPracticeFinal.pdf (last visited on May 17, 2013); *see also supra* note 7, NAPSA Performance Standards and Goals for Pretrial Release and Diversion.

11.   *See supra* note 10, Promising Practices in Pretrial Diversion at 5.  Pretrial diversion programs may include the following elements: (1) offers persons charged with criminal offenses alternatives to traditional criminal court proceedings; (2) permits participation by the accused on a voluntary basis; (3) occurs no sooner than the filing of formal charges and no later than a final adjudication of guilt; and (4) results in dismissal of charges, or its equivalent, if the participant successfully completes the diversion process.  *See* Performance Standards and Goals for Pretrial Diversion/Intervention November 2008, available at http://www.napsa.org/publications/diversion_intervention_standards_2008.pdf (last visited on May 17, 2013).

[¶24.] Our Legislature might well consider enacting authorization for a formal pretrial diversion program.[12] Such legislation could address many questions that will remain open after today. Should criminal charges on any crime be permitted a diversion, or, as in many jurisdictions, should there be legislative limits on the types of crimes subject to diversion? Is anyone eligible for diversion, or should it be limited to first offenders, nonviolent offenders, youthful offenders, or chemically-addicted offenders? Should there be guidelines to ensure statewide uniformity in decisions allowing deferred prosecutions?[13] How can the process be administered in a nondiscriminatory manner? *See* South Dakota Equal Justice Commission Final Report, Findings on Pretrial Processes, 7.1.4; Recommendation 7.2.3.[14] Can prosecutors demand waiver of certain rights as a condition to

---

12. *Polikov v. Neth*, 699 N.W.2d 802, 804 (Neb. 2005) ("the power to design a formal pretrial diversion program is a legislative function").

13. *See, e.g.*, ABA Standards on Prosecution Function, Standard 3-3.8 (Discretion as to Noncriminal Disposition: "(a) The prosecutor should consider in appropriate cases the availability of noncriminal disposition, formal or informal, in deciding whether to press criminal charges which would otherwise be supported by probable cause; especially in the case of a first offender, the nature of the offense may warrant noncriminal disposition. (b) Prosecutors should be familiar with the resources of social agencies that can assist in the evaluation of cases for diversion from the criminal process."). Standards available at: http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_pfunc_blk.html.

14. Report available at: http://sdjudicial.com/uploads/downloads/SDEJCFinalReport2006jan.pdf. *See also supra* note 7, NAPSA Performance Standards and Goals for Pretrial Release and Diversion, Standard 3.2 ("No potential participant should be denied access to the pretrial diversion/intervention option based upon race, ethnic background, religion, gender, disability, marital status, sexual orientation or economic status. No person who is protected by applicable

(continued . . .)

obtaining a deferred prosecution?[15]  How long can a term of a deferred prosecution last?  Do allegations of breach require a due process hearing?  All these issues await resolution through enabling legislation.  Without legislation, these questions may well be resolved only haphazardly through court rulings like the one today.

---

(. . . continued)
     federal or state laws against discrimination should be otherwise subjected to discrimination for eligibility purposes.").

15.    *See Abad v. Cozza*, 911 P.2d 376, 377 (Wash. 1996) (permissible under deferred prosecution statute to require "persons seeking a deferred prosecution to waive, upon any subsequent revocation of the deferred prosecution, the rights to a jury, to call and question witnesses, and to testify in the postrevocation trial").