*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHAD ROBERT BRUINING,

Defendant-Appellant.

UNPUBLISHED
December 22, 2025
8:52 AM

No. 367023
Kent Circuit Court
LC No. 21-005525-FC

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

M. J. KELLY, P.J. (*dissenting*).

I respectfully dissent.

On the day of his trial, Chad Bruining was offered a plea deal by the prosecution. The record reflects that Bruining had many questions regarding the details of the plea bargain and its potential impact upon his future. The court, the prosecutor, and Bruining's lawyers answered his questions and attempted to clarify aspects of the plea that repeatedly confused Bruining. Interspersed in the discussion of the plea offer, Bruining was repeatedly questioned regarding whether he desired to change from his jail-issued clothing into civilian clothing. Bruining, who was still cogitating on whether he should or should not accept the plea offer, did not satisfactorily answer the questions relating to his choice of attire.

The overlapping discussions lasted approximately 30 minutes, after which, the prosecutor stated:

> Your Honor, I'm going to withdraw the plea in approximately five minutes. We've been on the record here for 30 minutes, getting nothing accomplished. Mr. Bruining will have the next five minutes to make a decision, and if he hasn't entered a plea by then, the People are withdrawing their agreement to 25 years, and we'll just try the case.

Thereafter, Bruining conferred with his lawyers. One of his lawyers then stated that it "looks like we're going to have to have a trial." Bruining responded, "I didn't say that." His other lawyer then requested that the trial court ask Bruining "one more time" if he wanted to accept the plea

-1-

offer. Bruining stated that he understood that he needed to make a decision. The court agreed, noting that Bruining had "one minute before the offer's not there anyway and the decision would be made for you."

Bruining then stated multiple times that he "guessed" that his decision was "to take the plea agreement." His lawyer then instructed him to "[s]top talking" and that they were "going to try it." Bruining protested. He stated, unequivocally, "My decision was to take the plea deal." When the court asked him to repeat it, he stated that he guessed that he was "taking the plea deal." The court took his statements as an acceptance of the plea offer made by the prosecution by asking him to stand and raise his right hand. Notably, the prosecutor did not state at that time—or at any future time—that the plea had expired. Nor is there any indication on the record, after Bruining stated that he would accept the plea agreement, that the prosecutor otherwise exercised his right to withdraw the plea.

The record plainly reflects that Bruining was asked by the court and both of his lawyers to raise his right hand. He was not told that he needed to be sworn in so that the court could engage in a plea colloquy. When he expressed confusion as to what was "going on," the deputy—not the court, his lawyers, or the prosecutor—advised that he needed to be sworn in. He was again asked to raise his right hand.[1] He started to say something but was interrupted by his lawyer stating that "we're going to have a trial." The court then stated that time was "up anyway." Bruining was then taken to change out of his jail garb despite the fact that he had never made a decision on that matter.

The majority reads the above exchange far differently than I. They stress the times that Bruining indicated that he "guessed" he would accept the plea, and brush aside his unequivocal statement that his decision was to take the plea agreement. They state that the agreement expired before the plea was accepted by the court and so the prosecutor implicitly withdrew it. In support, they cite *People v Heiler*, 79 Mich App 714, 722; 262 NW2d 890 (1977), for the proposition that, so long as the defendant is not prejudiced, a prosecutor may revoke a plea offer until the time that the trial court accepts the plea. I do not find *Heiler* dispositive, however.

In *Heiler*, the prosecutor withdrew a plea offer the day before the plea was to be entered. *Id*. at 716. In contrast, in this case, the prosecutor set a five-minute time limit for the offer. When—by the trial court's calculation—approximately one minute remained on the offer, Bruining stated that his decision was to accept the plea agreement. As noted above, the court asked him to repeat himself, he stated that he guessed he was taking the plea. At that time, the trial court started the procedure for accepting the plea agreement. That is, consistent with MCR 6.302(A), the court took steps to place Bruining under oath, which is a mandatory first step in accepting a

---

[1] Both the trial court and the majority rely heavily on Bruining's failure to raise his right hand and be sworn after the court accepted his statement that "My decision was to take the plea deal." Indeed, it was when and because his manacled hand was not sufficiently raised that the process collapsed. But Michigan law is clear: "Witnesses need not raise their right hands when taking an oath to testify truthfully, and such oaths need not be prefaced with any particular formal words." *People v Putnam*, 309 Mich App 240, 244; 870 NW2d 593 (2015).

plea by a criminal defendant. Notably, the trial court did not find Bruining's use of the word "guess" as an equivocation and instead found his proclamation that he would take the plea to be a genuine acceptance of the prosecutor's offer *within the time limit* set for Bruining to accept the offer. Thus, on this record, I would hold that Bruining accepted the plea agreement within the five minute timeframe given by the prosecutor and the trial court signaled its willingness to accept that plea when it began the required colloquy under MCR 6.302. At that time, the five-minute timeframe was no longer applicable. Thus, withdrawal of the plea by expiration of the timeframe was no longer an option.

Stated differently, I view Bruining's acceptance of the plea offer within the five minutes as "stopping the clock" on the five-minute timeframe, but the majority seems to contend that the clock kept running after the court started the plea colloquy under MCR 6.302. The process for accepting a plea under MCR 6.302 is necessarily time consuming. In order for the plea to be successfully entered, the court had to (1) place Bruining under oath; (2) ascertain that his plea was understanding by advising him of numerous details regarding the offense that he was pleading to (including the maximum possible prison sentence and any electronic monitoring) and advising him of the many rights that he would be giving up by entering a plea; (3) determine that the plea was voluntary by making inquiries of the prosecutor and Bruining's lawyers and by detailing information related to the sentencing guidelines; (4) conclude that the plea was accurate by explaining the reasons why a no contest plea was appropriate and by finding a factual basis for the plea that would not involve questioning Bruining; and (5) making additional inquiries as required by the court rule. Under the majority's logic, the time limit imposed by the prosecutor continued running past the time that Bruining accepted the plea offer and the court signaled its willingness to accept that plea by starting the plea colloquy. The majority does not explain why the clock necessarily kept running after the court determined that Bruining accepted the offer and began to take the plea. Nor does the majority explain at which point in the plea colloquy the clock would stop running. As stated above, it is my position that the clock stopped running when Bruining accepted the plea and the court acknowledged his acceptance and proceeded to try and take his plea. A withdrawal based upon the expiration of the time limit was, therefore, no longer possible.

Because there is nothing on the record suggesting that the prosecutor intended to make an offer that would be impossible for both Bruining and the court to accept within the proffered timeframe, I would read the prosecutor's offer in a common-sense manner: the prosecutor gave Bruining five minutes to accept or reject the offer and the offer was not contingent upon the court accepting Bruining's plea within that same period. Given that Bruining accepted within that timeframe, I would hold that the trial court erred by rejecting his plea based upon its finding— after it began the plea proceedings under MCR 6.302—that the offer had expired. That is, after signaling that it was proper to take the plea by attempting to place Bruining under oath, the court halted the proceedings, not because it found that the plea was not knowing, understanding, and accurate, but based upon its erroneous position that the offer was not accepted.

In sum, I dissent because Bruining had accepted the plea offer before the time to accept the offer had expired.[2]  At no time did Bruining ever say that he did not want to accept the plea, nor did the prosecutor state that the offer was withdrawn or expired.  Thus, I would hold that the trial court erred by rejecting Bruining's plea on the basis that there was no longer an offer instead of continuing its obligation to determine whether the plea Bruining had stated he was willing to accept was going to be voluntary, understanding, and accurate.[3]

---

[2] I do not find it necessary in resolving this case to address the ineffective-assistance claim. However, it is curious that the defense team was so quick to say that "Judge, it looks like we are going to have a trial"—a statement that Bruining immediately rejected by stating, "I didn't say that"—but then less than 15 minutes later, when Bruining was out of the courtroom and supposedly changing into his civilian clothes for trial, to represent to the court:

> If I may add for the record, it continues to be our position that Mr. Bruining is not competent to stand trial.  I think the Court's seen that he is unable to rationally assist in his defense.  I know that the State Forensic Center has found him competent and that he has not cooperated with our independent attempt to do an independent forensic evaluation, but I believe that's, you know, evidence further that he is unable to do so, not that he is unwilling, but that he is unable to based on his mental-capacity.  So it is our continued position that he is not competent to stand trial.

In light of the defense team's beliefs regarding Bruining's competency, one would think that his defense team would have tried all the harder to see the plea bargain through to fruition.

[3] Because both the majority and I cite to what we believe are relevant portions of the transcript, for clarity and completeness, the transcript reads as follows:

> *Prosecutor*.  Your Honor, I'm going to withdraw the plea in approximately five minutes.  We've been on the record here for 30 minutes, getting nothing accomplished.  Mr. Bruining will have the next five minutes to make a decision, and if he hasn't entered a plea by then, the People are withdrawing their agreement to 24 years, and we'll just try the case.
>
> *Trial court*.  Okay.
>
> (At 10:45 a.m., defendant talking to attorneys)
>
> *First defense lawyer*.  Judge, it looks like we're going to have to have a trial.
>
> *Bruining*.  I didn't say that.
>
> *Second defense lawyer*.  Well, if the Court will ask one more time.  This is your last chance, Mr. Bruining.  I don't want you to miss an opportunity, if you're interested.  I would—I'm asking the Court to ask one more time, and this is it.  If

you do not answer, silence is no, you do not wish to accept the plea and you wish to have a trial. Do you understand that? Mr. Bruining, do you understand that?

*Bruining*. I understand that.

*Second defense lawyer*. Okay.

*Bruining*. I need to make a decision.

*Trial court*. Yes, and you have one minute before the offer's not there anyway and the decision would be made for you.

*First defense lawyer*. Yep.

*Bruining*. I guess I—my decision would be to take the plea, I guess. I don't—I really don't —I've never been in this situation. I'm scared. I don't understand why I've been charged.

*First defense lawyer*. Okay. Do you want to take—you said you want to take the plea or no?

*Bruining*. I feel like I'm being put in the—

*Second defense lawyer*. Judge isn't going to let you say that we're pushing you, so do you want to or not?

*Trial court*. Mr. Bruining, are you going to change clothes?

*Bruining*. Yeah, I guess my decision is to take a plea agreement. I don't know. I don't—that would be—I don't want to spend the rest of life for something I didn't do, but I—

*The prosecutor*. Your Honor—

*First defense lawyer*. Stop talking, okay? We're going to try it.

*Bruining*. I said I—

*Trial court*. Are you changing clothes?

*Bruining*. My decision was to take the plea deal.

*Trial court*. I'm sorry?

*First defense lawyer*. Say it again.

*Bruining*. I guess I'm taking the plea deal.

*Trial court*. Would you stand? Would you raise your right hand?

*Bruining*. I just don't feel comfortable.

*Trial court*. Raise your right hand.

*First defense lawyer*. Raise your right hand.

*Second defense lawyer*. Raise your right hand.

*Bruining*. I don't even know what's going on today. I'm like—

*The deputy*. She needs to swear you in, so raise your right hand to the best of your ability.

*Trial court*. Can you raise your right hand as best you can?

*First defense lawyer*. Put your hand up.

*Bruining*. I've never—

*First defense lawyer*. Well, then we're going to have a trial.

*Trial court*. Time's up anyway. Time's up. I know it's not an easy decision.

(At 10:52 a.m., defendant taken back to change for trial)

\* \* \*

*Trial court*. And also for the record, apparently Mr. Bruining has come back out into the courtroom. He's still in jailhouse greens. Apparently, he's decided not to change into civilian clothes which is, again, his decision. And despite being advised against it by myself—I'm not sure if counsel did as well, but I know I did advise that he change clothes. He's decided not to do so. So therefore, we will proceed with the case—

*Bruining*. Your Honor—

*Trial court*. –with him dressed in jailhouse greens, but there is a requirement that he—the shackles be removed for trial.

*Bruining*. Your Honor, somebody said I was raising the wrong hand.

/s/ Michael J. Kelly

---

*Trial court.* It doesn't matter at this point.

*Bruining.* So I said I—

*Trial court.* Yeah, it doesn't matter. The time's passed, so there's no offer anymore. It's not up to me.

*Bruining.* Assuming that was all I was doing was raise—trying to raise my hand—

*Trial court.* Right. But at that point, the Prosecutor withdrew the offer. There is no offer.

*Bruining.* I said that I was willing—I wanted—was willing to take the offer, and somebody said I was raising the wrong hand, so I was looking to see how—

*Trial court.* Right. And the time went by, so—

*Bruining.* –to try to raise my hand.

*A.* Okay. So at this point, you can have a seat, yes. We're going to go forward with trial. . . .

-7-