[No. 46467–7.   En Banc.   July 23, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD
LEE WHEELER, *Appellant.*

*Robert J. Wayne,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Joanne Y. Maida, Senior Deputy,* for respondent.

*Robert H. Aronson* on behalf of the University of Washington School of Law, amicus curiae for appellant.

UTTER, J.—Richard Wheeler, by direct appeal from a verdict and judgment of second degree assault with a firearm, raises four issues. These involve the enforceability of a plea bargain, the admission of both altered testimony and hearsay, and a jury instruction defining "knowledge." We find no reversible error and accordingly affirm.

Early on the morning of December 26, 1978, Richard Wheeler, a white, middle–aged shipyard worker, returned to his houseboat from a Christmas party to find that the boat had been burglarized for the second time that month. Kelly, a younger white male whom Wheeler had met the previous day, was with Wheeler, and the two had been drinking heavily.

Wheeler had reported the first burglary to the police, but was dissatisfied with their investigation. Neighbors had given Wheeler descriptions of two black males who allegedly had been in the marina on several occasions. Wheeler and Kelly returned to Wheeler's pickup and left. Wheeler had a .410 gauge shotgun in the truck.

At about 2 a.m. Wheeler and Kelly drove alongside three young black males, two of whom ostensibly fit the description given by Wheeler's neighbors, and engaged the three in conversation. Two of the three soon fled, either because they recognized Wheeler or because they saw the shotgun. Wheeler and Kelly caught the third, a 15–year–old, and Wheeler knocked him down, allegedly to examine the tread on his shoes to determine if they matched prints left on the boat. Wheeler then struck the youth on the side of the head, tearing one ear in a manner that required several

stitches to mend. The victim's mother and sister came running out of a nearby house to protest, and Wheeler shouted something at them, apparently to the effect that they would never see their boy again.

Wheeler and Kelly then forced the victim into the pickup and drove him to a secluded area about 6 miles away. During the trip, Wheeler threatened the youth, struck him with his elbow, and knocked his head into the back cab window, giving him a black eye, several facial cuts, and a bruised and bloodied scalp. Once they arrived, Wheeler physically kicked the youth out of the vehicle and, as the boy was running away, fired a shot either at him or into the air.

Wheeler and Kelly were apprehended before the youth was located, and in an inadvertent confrontation at the police station, Wheeler told the boy's mother that he had killed her son. Wheeler testified, however, that he never intended to seriously injure the youth, but only wanted to teach him a lesson and to scare him into telling where the stolen property was located.

Prior to trial the defendant's attorney and the trial prosecutor entered into a plea bargain negotiation whereby the defendant offered to plead guilty to second degree assault with a deadly weapon and the prosecution apparently agreed to drop the firearm allegation, to drop the kidnapping charge, and to recommend a 3–year deferred sentence conditioned on 120 days in jail (with work release), restitution, and payment of costs.

There is substantial evidence that the bargain was first accepted by the prosecutor who then revoked the acceptance shortly before the guilty plea was to be entered. The trial prosecutor maintains, however, that no formal acceptance occurred. A motion for specific performance was heard before Judge Barbara Rothstein on March 23, 1979. Judge Rothstein, assuming but not finding that an agreement had been reached, held that the plea bargain was not enforceable.

The trial prosecutor evidently changed her mind regarding the merits of entering into the plea bargain as a result

of her interviews with witnesses and because of the reaction of the victim's family to the agreement. The plea bargain was officially retracted, however, by Prosecuting Attorney Norm Maleng, who announced a new departmental policy of personally reviewing all of the evidence in difficult cases and deciding whether "manifest injustice" would occur if an agreement were allowed to stand.

On May 1, 1979, after several continuances, Wheeler and Kelly were tried together by jury in a consolidated action. Defendant Wheeler was convicted of second degree assault with a firearm and was sentenced to prison.

During the trial, a police officer testified, on the basis of what he had been told by Kelly, that "Wheeler said he was going to go out and try to get the guy." Verbatim Report of Proceedings, at 220. Wheeler's counsel objected on the basis of the hearsay rule, but the objection was overruled. The defense counsel then moved for mistrial, renewed motions for severance, and also offered to waive the jury. Counsel claimed one of these measures was necessary to preserve Wheeler's right to cross-examine the codefendant who would not take the stand. The court denied all three motions.

Sometime later, another police officer, over defense objections, altered his testimony regarding statements made by Wheeler. The policeman changed statements in the first person plural "we" to the singular form "I." The prosecutor had instructed the officer to do so.

At the conclusion of the trial, the court instructed the jury that "knowingly" is defined as "information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by law as being a crime." Instruction No. 11. The defendant excepted on the grounds that the instruction created a constitutionally impermissible presumption. The trial court, however, denied the exception.

## I

The defendant seeks specific performance of the prosecutor's initial offer. He contends that the prosecutor could not legally rescind the offer until he had an opportunity to accept it. The issue, as framed by his argument, is one of first impression in this state.

The weight of authority is that, absent some detrimental reliance by the defendant, the State may withdraw from any plea agreement prior to the actual entry of a guilty plea. *Government v. Scotland,* 614 F.2d 360 (3d Cir. 1980); *State v. Collins,* 300 N.C. 142, 265 S.E.2d 172 (1980); *State v. Edwards,* 279 N.W.2d 9 (Iowa 1979); *Shields v. State,* 374 A.2d 816 (Del.), *cert. denied,* 434 U.S. 893, 54 L. Ed. 2d 180, 98 S. Ct. 271 (1977); *People v. Heiler,* 79 Mich. App. 714, 262 N.W.2d 890 (1977). That result has been reached by strictly applying contract principles and characterizing the plea bargain as a unilateral contract. That is, only the defendant's plea, or some other detrimental reliance upon the arrangement, constitutes an acceptance of the agreement; and consequently the bargain can be revoked if neither has occurred. Those courts have further reasoned that enforcing bargains made before the plea would inhibit the prosecutor's use of plea bargaining; and that the defendant, because she or he can still get a jury trial, has an adequate remedy for the State's revocation.

Only one case has deviated from that conclusion. *Cooper v. United States,* 594 F.2d 12 (4th Cir. 1979). *Cooper* held that a defendant was entitled to specific performance of a plea bargain, even though it was rescinded by the government prior to defendant's acceptance. In reaching that result, the court reasoned that contract principles cannot control the contours of constitutional rights. It found two constitutional rights which, it thought, require enforcement of plea proposals. They are:

[M]ost obviously and directly, the right to fundamental fairness embraced within substantive due process guarantees; less directly perhaps, but nonetheless importantly, the Sixth Amendment right to effective assistance

of counsel. The general relevance of the former is too plain to require discussion. That of the latter can be readily stated. . . .

. . .

. . . To the extent that the government attempts through defendant's counsel to change or retract positions earlier communicated, a defendant's confidence in his counsel's capability and professional responsibility, as well as in the government's reliability, are necessarily jeopardized and the effectiveness of counsel's assistance easily compromised.

*Cooper,* at 18–19.

Like the other jurisdictions, we reject the *Cooper* analysis. A defendant does not have a constitutional right to plea bargain, *see Weatherford v. Bursey,* 429 U.S. 545, 51 L. Ed. 2d 30, 97 S. Ct. 837 (1977), and thus the failure to enforce a plea *proposal,* as opposed to an "accepted" offer, cannot violate substantive due process. Substantive due process protects those rights which are

"so rooted in the traditions and conscience of our people as to be ranked as fundamental," . . . or are "implicit in the concept of ordered liberty."

*Rochin v. California,* 342 U.S. 165, 169, 96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R.2d 1396 (1952), quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 78 L. Ed. 674, 54 S. Ct. 330, 90 A.L.R. 575 (1934), and *Palko v. Connecticut,* 302 U.S. 319, 325, 82 L. Ed. 288, 58 S. Ct. 149 (1937). The right to specific performance of a plea proposal, if it can be called a right, is not rooted in the "traditions and conscience of our people." That is evident by the fact that the overwhelming weight of judicial authority has refused to recognize any such right. *See, e.g., Scotland, supra; Collins, supra; Edwards, supra; Shields, supra; Heiler, supra.* While the defendant is to be treated with fairness, *State v. Tourtellotte,* 88 Wn.2d 579, 564 P.2d 799 (1977), which in most cases would dictate that the prosecutor comply with any extended offer, we cannot conclude that the right to any specific offer is so fundamental and so instrumental to our system of justice that it rises to constitutional mag-

nitude.

Furthermore, the detrimental effect on the attorney–client relationship is speculative at best. For

> in any plea negotiations, even when they do not involve the withdrawal of a plea proposal, there is a possibility that the defendant may lose faith in his attorney when, for example, the government fails to offer any plea proposal or offers only an unfavorable one.

*Government v. Scotland,* 614 F.2d 360, 363 (3d Cir. 1980). Stretching the Sixth Amendment to enforce a plea proposal is therefore unacceptable.

We conclude that absent a guilty plea or some other detrimental reliance by the defendant, the prosecutor may revoke any plea *proposal.* Since the defendant has alleged only "psychological" reliance on the prosecutor's offer, and without a showing that the prosecutor has abused its discretion by routinely rescinding its offers, the trial court correctly declined to enforce it.

## II

The defendant maintains that after the last break–in, he left his houseboat with the sole intention of summoning the police. He further asserts that the only substantial evidence which contradicts this position is the multiple hearsay testimony of a police officer who stated that Kelly, the codefendant, told him that Wheeler said he was "looking for" and "was going to go out and try to get the guy" who burglarized his boat. He argues that the admission of that hearsay constitutes reversible error.

Counsel for the defendant objected to this testimony as a violation of the rule established in *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968). In *Bruton,* the United States Supreme Court held that the use of hearsay statements of a nontestifying codefendant was a violation of the defendant's constitutional right to cross–examine adverse witnesses. *Bruton v. United States, supra* at 128. Soon after its decision, however, the court held that *Bruton* did not apply in cases where only

harmless error results from introduction of the testimony. *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969). Harmless error is where the court is convinced beyond any reasonable doubt that no prejudice occurred. *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Braun,* 82 Wn.2d 157, 163, 509 P.2d 742 (1973).

To avoid the *Bruton* problem, this court adopted CrR 4.4(c) which provides that a defendant's severance motion "shall be granted" unless the prosecutor agrees not to use the statement in his case in chief or deletes all reference to the moving defendant, thus eliminating the prejudice. The rule has been interpreted to mean that the trial court has no discretion in this area and thus is obligated to grant separate trials unless one of the two conditions is met. *State v. Vannoy,* 25 Wn. App. 464, 472, 610 P.2d 380, *remanded on other grounds,* 93 Wn.2d 1027 (1980). But, like a *Bruton* violation, a CrR 4.4(c) violation is subject to the harmless error test. *Vannoy, supra.*

In this case, while the admission of the testimony violated both *Bruton* and CrR 4.4(c), the error was harmless beyond a reasonable doubt. The challenged testimony is evidence only of prior intent or motive, neither of which are elements of second degree assault. Second degree assault only requires "knowledge" of one's acts at the time of their commission. RCW 9A.36.020. Such has been found where the defendant "menacingly pointed an apparently loaded" gun at another, *State v. Harris,* 69 Wn.2d 928, 935, 421 P.2d 662 (1966), or admitted that he fired a shot to frighten the victim. *State v. Stevens,* 41 Wn.2d 694, 251 P.2d 163 (1952). The defendant admitted that he did the latter, and thus the error was harmless.

## III

The prosecution instructed a police officer to substitute the word "I" for "we" when testifying about statements made by defendant Wheeler to that officer. The prosecutor apparently made such a request to avoid any prejudice to

the codefendant Kelly. *See* CrR 4.4(c)(1)(ii). The defendant argues that the request constituted prosecutorial misconduct, was prejudicial to his case, and that his conviction must therefore be dismissed.

It is difficult to see how the substitution constituted prosecutorial misconduct. Absent not using the statement at all, it seems the prosecutor acted properly, given that it was evident that the defendant, but not codefendant Kelly, would take the stand.

However, even if the substitution were inappropriate, reversal is appropriate only if there is a substantial likelihood that the prosecutor's misconduct affected the jury. *State v. Young*, 87 Wn.2d 129, 550 P.2d 1 (1976). In this case, the substitution only occurred once and the defense counsel made the jury aware of the change on several occasions. Because the jury was aware of the substitution, and given the other evidence, no prejudice ensued.

## IV

The defendant was charged with second degree assault under the alternative theories of (1) knowing infliction of grievous bodily injury, RCW 9A.36.020(1)(b), and (2) knowing assault with a deadly weapon, RCW 9A.36-.020(1)(c). The term "knowingly" was defined to the jury as:

A person knows or acts knowingly or with knowledge when:

. . .

(2) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by law as being a crime.

Instruction No. 11. The defense excepted to the instruction on the ground it imposed a criminal negligence or reasonable man standard. The exception was not granted by the court.

In *State v. Shipp*, 93 Wn.2d 510, 610 P.2d 1322 (1980), this court held that the use of such an instruction is unconstitutional. *Accord, State v. Ticeson*, 26 Wn. App. 876, 614 P.2d 245 (1980). The court reasoned that the

instruction could lead to several impermissible presumptions: first, that if the defendant possessed knowledge which would impart knowledge to a reasonable person, then the defendant had knowledge; and second, if the defendant was negligently ignorant in a circumstance where the ordinary man would have knowledge, then the defendant is presumed to have knowledge. *State v. Shipp, supra* at 515.

The defendant testified that he did not intentionally or knowingly cause grievous bodily harm to his victim, and asserts that because of this erroneous instruction, the jury's findings must be reversed. The prosecution admits that the instructions were incorrect under *Shipp,* but maintains only harmless error resulted.

Instruction No. 11 also defined acting knowingly as "acting intentionally" and in instruction No. 10 the word "assault" was defined for the jury as "an act, with unlawful force, done with intent to inflict bodily injury . . . an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury . . ." In *Shipp,* one of the defendants was convicted under an assault instruction similar to the one in this case, and there we concluded, because of the assault instruction, that the jury must have found that the defendant had acted intentionally and hence knowingly. *Shipp,* at 518. The assault instructions in effect converted the erroneous "knowledge" instruction into harmless error. Given the assault instruction, No. 10, we conclude, as we did in *Shipp,* that the error was harmless.

The trial court is affirmed.

BRACHTENBACH, C.J., and STAFFORD, DOLLIVER, HICKS, WILLIAMS, and DIMMICK, JJ., concur.

ROSELLINI, J., concurs in the result.

Reconsideration denied October 23, 1981.