

2016 AUG -8 A: 8: 30

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                               )     DIVISION ONE
        Respondent, )
                               )     No. 73241-2-I
        v. )
                               )     UNPUBLISHED OPINION
MARVIN DUQUE, )
                               )
        Appellant. )
                               )     FILED: August 8, 2016
_____ )

DWYER, J. — Marvin Duque appeals from the judgment entered on a jury's verdicts finding him guilty of three counts of child molestation in the first degree, one count of rape of a child in the first degree, and one count of rape of a child in the second degree. On appeal, he contends (1) that the trial court erred when it admitted certain evidence pursuant to ER 404(b), (2) that the trial court erred by denying his motion to sever trial on the counts pertaining to one victim from the counts pertaining to the other victim, (3) that his trial counsel provided constitutionally ineffective assistance by choosing not to renew the motion to sever, and (4) that the trial court erred by permitting the jury to view a document, during its deliberations, that was not admitted as either substantive evidence or an exhibit. Finding no error, we affirm.

I

By amended information, the State charged Duque with three counts of child molestation in the first degree,[1] one count of rape of a child in the first degree,[2] and one count of rape of a child in the second degree.[3] The charged offenses were alleged to have been committed over many years against his daughter (C.D.) and his niece (A.D.).

Prior to trial, Duque both moved to sever the three counts involving A.D. from the two counts involving C.D, desiring that they be tried separately, and to suppress the introduction of an audio-recorded conversation (between Duque and C.D.) wherein Duque purportedly gave C.D. an ultimatum: that if she did not engage in sexual activity with him for 30 minutes she had to move out of his apartment. The State moved, pursuant to ER 404(b), to admit "all of [Duque's] uncharged sexual behavior toward A.D. and C.D."[4]

In February 2015, the parties appeared before the trial court to address preliminary matters. After hearing the argument of counsel, and considering the briefing submitted, the trial court denied both of Duque's motions. The trial court also granted the State's motion, ruling admissible evidence of Duque's uncharged sexual behavior toward A.D. and C.D. pursuant to ER 404(b). The

---

[1] RCW 9A.44.083.
[2] RCW 9A.44.073.
[3] RCW 9A.44.076.
[4] The alleged sexual abuse in this case occurred many times over the course of many years. Thus, the State did not expressly rely on any specific sexual act to form the basis for any particular count. Rather, it argued that the jury could base each of its verdicts on any act that it unanimously agreed had occurred. Both the State and the trial court referred to the evidence of sexual acts that fell outside of the charging period as "uncharged" acts. The trial court defined the "uncharged" sexual behavior as "includ[ing] other incidents of sexual touching and other instances in which the defendant behaved in a sexual way toward A.D. and C.D."

No. 73241-2-I/3

motion to sever was never renewed.

At trial, the audio-recorded conversation was played for the jury. Because the conversation was in Spanish, the State had the recording transcribed into English by a certified interpreter. This transcript was provided to the jury and the jury was instructed as to the document's intended function.[5] Duque did not object to the use of the transcript in this way.

During its deliberations, the jury submitted a note to the trial court requesting to view the transcript.[6] The trial court then engaged in a colloquy with counsel concerning the jury's request. Following this conversation, the parties agreed both that the jury could view the transcript in open court while listening to the audio recording and that the jury should, once again, be instructed as to the transcript's function. In response to the jury's note, the trial court submitted a written response. This written response to the jury read, "[t]he transcript is not admitted into evidence. However, the transcript is available to you as a visual aid in listening to the audio in open court, if you wish to do so."[7] The jury later

_____

[5] The jury was instructed as follows:
Members of the jury, you will now hear a recording in the Spanish language. You will be provided with a transcription and translation of that recording. If you speak Spanish, understand Spanish, or have any personal knowledge of the Spanish language, you are to disregard that personal knowledge and rely only on the transcription and translation that has been provided to you.
[6] The jury's note to the trial court read:
The jury would like to request the transcript of the audio recording evidence, exhibit #6. The CD was provided as evidence but it is not useful as evidence. An audio player will not be sufficient as the recording is in Spanish. The transcript was testified by Claudia A'Zar.
[7] The prosecutor drafted this written response in the presence of the trial court and Duque's counsel. At the time that this response was drafted, the prosecutor read the written response aloud and Duque's counsel stated, "I think that's fine."

- 3 -

requested both to view the transcript and listen to the audio recording again. The trial court granted this request.

The jury found Duque guilty as charged. The trial court sentenced Duque to a total of 279 months of confinement, imposing concurrent terms on all five counts.

He now appeals.

II

A

Duque first contends that the trial court erred by admitting certain evidence pursuant to ER 404(b). This is so, he asserts, because such evidence was not admissible to show that he acted with a common scheme or plan when committing the alleged acts of sexual abuse. We disagree.

"Under ER 404(b) evidence of other crimes, wrongs, or acts is presumptively inadmissible to prove character and show action in conformity therewith." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995) (citing ER 404(b); Carson v. Fine, 123 Wn.2d 206, 221, 867 P.2d 610 (1994)). However, such evidence may be admissible for "other purposes." ER 404(b). "One proper purpose for admission of evidence of prior misconduct is to show the existence of a common scheme or plan." State v. Gresham, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (citing State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003)).

A common scheme or plan "may be established by evidence that the Defendant committed markedly similar acts of misconduct against similar victims under similar circumstances." State v. Lough, 125 Wn.2d 847, 852, 889 P.2d

487 (1995). In a child sexual abuse case, evidence of "the existence of a design to fulfill sexual compulsions evidenced by a pattern of past behavior" is relevant to whether the crime occurred. DeVincentis, 150 Wn.2d at 17-18. In such circumstances, the evidence is admissible "because it is not an effort to prove the *character* of the defendant"; rather, "it is offered to show that the defendant has developed a plan and has again put that particular plan into action." Gresham, 173 Wn.2d at 422.

Admission of evidence for this purpose "requires substantial similarity between the prior bad acts and the charged crime." DeVincentis, 150 Wn.2d at 21. "Sufficient similarity is reached only when the trial court determines that the 'various acts are naturally to be explained as caused by a general plan. . . .'" DeVincentis, 150 Wn.2d at 21 (alteration in original) (quoting Lough, 125 Wn.2d at 860). There is no uniqueness requirement; the similarities need not "be atypical or unique to the way the crime is usually committed." DeVincentis, 150 Wn.2d at 13.

Evidence of prior misconduct is properly admitted where "the prior acts are (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial." Lough, 125 Wn.2d at 852. Where the trial court correctly interprets the rules of evidence, our review is for abuse of discretion. Gresham, 173 Wn.2d at 422. An abuse of discretion occurs when the decision of the trial court was manifestly unreasonable or based on untenable grounds. Powell, 126 Wn.2d at 258.

Here, Duque's claim of error is based on his assertion that "C.D. and A.D.'s uncharged allegations did not demonstrate a common scheme or plan because they are dissimilar to each other." Br. of Appellant at 27. Contrary to his present intimation, the record supports the trial court's finding, by a preponderance of the evidence, that "the evidence is admissible because it tends to prove a common scheme or plan of which the crime charged was a part." Specifically, the trial court found that "[b]oth alleged victims were relatives, the defendant was in a position of power as to both alleged victims, and the actual alleged sexual acts were substantially similar." The record does, indeed, indicate that Duque had a familial relationship with both girls: A.D. was his niece and C.D. was his daughter. Duque abused both girls in his apartment, while the girls were in bed, and, at times, while C.D. was either sleeping or watching television. Duque began abusing the girls at a young age, when A.D. was five or six years old and C.D. was eleven years old.[8] He committed the acts of sexual abuse while the girls were alone in his care. The alleged acts of sexual abuse committed against both girls were similar in kind. A.D. testified that the instances of sexual abuse varied, but involved Duque touching and kissing her body, putting his penis in her mouth, try[ing] to get [A.D.] to give a hand job once," and Duque "ejaculating on [A.D.'s] back." C.D. testified that Duque would touch her "whole body," (particularly her breasts, vagina, and butt). C.D. further testified to Duque "putting his hands inside [her] pants," "rubbing his penis on [her]," and that

---

[8] Duque began abusing the girls at different ages. However, the charging period indicates that both girls were under the age of 14 when the alleged acts of sexual abuse were committed.

he would subject her to "oral sex." C.D. stated that, around the age of 12 or 13, Duque started putting his fingers "[i]nside [her] vagina." These similarities were sufficient to support the trial court's finding that the incidents demonstrated a common scheme or plan.

The record also supports the trial court's finding that "[t]here is relevance to the elements of the crimes, including sexual gratification, there is also relevance to rebut the defense of denial." As to the determination that the challenged evidence was relevant to the elements of the charged crimes, the evidence admitted at trial established that C.D.'s memory of the alleged acts of sexual abuse was sharper than A.D.'s memory. For this reason, introducing evidence from both girls regarding similar acts of sexual misconduct would tend to make the fact of consequence—that Duque committed these acts of sexual abuse—more or less probable than without evidence from one witness or the other. The trial court properly determined that the challenged evidence was relevant for this purpose.

As to the determination that the challenged evidence was relevant to rebut Duque's general denial defense, his defense to the charged offenses depended on referencing the relationship between A.D. and C.D. and the alleged acts of abuse. His theory regarding C.D. was that C.D.'s resentment toward him provided a potential motive for her to fabricate the alleged acts of sexual abuse. His theory regarding A.D. was that "[t]he only theory available for development with regard to A.D. was that she followed C.D.'s lead in disclosing the molestation by jumping in after C.D.'s disclosure telling her mother it happened to

her too." Br. of Appellant at 20. In this regard, by Duque's own admission, the acts of sexual abuse involving C.D. were relevant to explaining A.D.'s potential motive to disclose the alleged sexual abuse that he committed against her. Again, the trial court properly determined that the challenged evidence was also relevant for this purpose.

Finally, Duque's claim of error is also based on his assertion that "the evidence in this case was not more probative than prejudicial." Br. of Appellant at 32. Again, contrary to his present intimation, the record supports the trial court's findings on this point. The trial court found both that "the probative value of the following incidents is not outweighed by the danger of unfair prejudice or confusion of the issues" and that "[t]he evidence is highly probative for specific purposes and there is no other, less prejudicial means of admitting the same information." As there was no forensic evidence introduced at trial, the jury's determination depended entirely on weighing the credibility of witness testimony, including that of the two alleged victims. Given this state of affairs at trial, the trial court properly determined that the probative value of the challenged evidence outweighed any potential prejudicial effect.

In short, the trial court properly engaged in a detailed ER 404(b) analysis. In doing so, it articulated both written and oral findings. These findings support the trial judge's determination that the challenged evidence was admissible pursuant to ER 404(b) to establish that Duque acted with a common scheme or plan when committing the alleged acts of sexual abuse. There was no abuse of judicial discretion.

- 8 -

B

Even had the trial court erred, however, no appellate relief would be warranted. This is because the trial court also admitted the challenged evidence for a second purpose—to establish Duque's lustful disposition toward the two child victims. In doing so, the trial court did not err.

"[E]vidence of collateral sexual misconduct may be admitted under ER 404(b) when it shows the defendant's lustful disposition directed toward the offended female." State v. Ray, 116 Wn.2d 531, 547, 1220 P.2d 850 (1991).

> "Such evidence is admitted for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged.
> . . . The important thing is whether it can be said that it evidences a sexual desire for the particular female. 2 Wigmore on Evidence (3d ed.) 367, § 399, says:
> The *kind of conduct* receivable to prove this desire at such prior or subsequent time is *whatever would naturally be interpretable* as the expression of sexual desire.
> Sexual intercourse is the typical sort of such conduct, but indecent or otherwise *improper familiarities* are equally significant."

State v. Ferguson, 100 Wn.2d 131, 134, 667 P.2d 68 (1983) (alteration in original) (internal quotation marks omitted) (quoting State v. Thorne, 43 Wn.2d 47, 60-61, 260 P.2d 331 (1953)).

The trial court ruled that the challenged evidence was admissible on this basis. The ruling was correct. Indeed, Duque does not claim otherwise in this briefing. Thus, Duque does not establish an entitlement to appellate relief.

III

Duque next contends that he was prejudiced by the trial court's denial of his motion to sever. However, Duque did not renew his motion to sever the charged counts before or at the close of the evidence. Thus, he waived appellate review of the trial court's decision. CrR 4.4(a)(2); State v. McDaniel, 155 Wn. App. 829, 858-59, 230 P.3d 245 (2010).

IV

Duque next contends that he was deprived of the effective assistance of counsel. This is so, he asserts, because his counsel did not renew the motion to sever before or at the close of the evidence.

"In order to prevail on an ineffective assistance claim, the defendant must demonstrate '(1) deficient performance, that his attorney's representation fell below the standard of reasonableness, and (2) resulting prejudice that, but for the deficient performance, the result would have been different.'" State v. Mullins, 158 Wn. App. 360, 371, 241 P.3d 456 (2010) (quoting State v. Hassan, 151 Wn. App. 209, 216-17, 211 P.3d 441 (2009)); see also Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (setting forth standard for ineffective assistance claim). In assessing counsel's performance, we "must make every effort to eliminate the distorting effects of hindsight and must strongly presume that counsel's conduct constituted sound trial strategy." In re Pers. Restraint of Rice, 118 Wn.2d 876, 888-89, 828 P.2d 1086 (1992). "The defendant alleging ineffective assistance of counsel 'must show in the record the absence of legitimate strategic or tactical reasons

- 10 -

supporting the challenged conduct by counsel.'" In re Pers. Restraint of Hutchinson, 147 Wn.2d 197, 206, 53 P.3d 17 (2002) (quoting State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). Indeed, because the analysis of counsel's performance mandates an objective inquiry, that performance cannot be deemed insufficient if any conceivable tactical choice could explain counsel's challenged action or inaction. In re Det. of Hatfield, 191 Wn. App. 378, 402, 362 P.3d 997 (2015). This inquiry does not involve an examination of counsel's subjective state of mind. "Strickland . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." Harrington v. Richter, 562 U.S. 86, 110, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

> "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

Harrington, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690).

The record supports the proposition that conceivable tactical reasons exist for Duque's trial counsel to have chosen not to renew the motion to sever. First, as the case played out, there was no medical or forensic evidence presented. In this regard, the jury's verdicts depended on its view of the credibility of trial witnesses, particularly A.D. and C.D. During the trial, Duque's counsel vigorously challenged the testimony of each, explaining potential credibility

problems with A.D.'s testimony and explaining C.D.'s purported jealousy as a motive to fabricate. Duque's challenge to A.D.'s testimony—that it was fabricated to allow her to share in the attention being paid to C.D.—is conceded by Duque on appeal as "[t]he only theory available for development with regard to A.D." Br. of Appellant at 20. To sever the trial, and continue on with only the charges against C.D. remaining, would sacrifice the only defense available against three of the counts—including the most serious: the first degree child rape charges involving A.D. It is easy to conceive of defense counsel choosing not to renew the severance motion under these circumstances.

In this regard, it is important to note that, if the motion to sever had been renewed, Duque could not control the trial court's discretion as to which of the counts to sever and which to allow to continue on to verdict. Jeopardy had attached as to all counts. The only way for the State to improve its case on any count would be for Duque to request severance, thus allowing for a retrial on the severed counts. In this light, it was a conceivable tactic for Duque's counsel to choose to see all counts—given the lack of forensic evidence tying Duque to the commission of these crimes and his relative success in challenging the victims' testimony—to go to the jury.

V

Duque next contends that the trial court erred by permitting the jury to review the content of a translated transcript during its deliberations. This is so, he asserts, because the transcript was not admitted as either substantive evidence or an exhibit.

- 12 -

Duque did not object to the jury's use of the transcript. We cannot determine how the trial court would have ruled on such an objection. Thus, Duque does not establish that a "manifest" error occurred. RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007) ("It is this showing of actual prejudice that makes the error 'manifest.'").

In addition, the doctrine of invited error precludes Duque from receiving appellate relief. This doctrine prohibits a party from setting up an error in the trial court and then complaining of it on appeal. In re Pers. Restraint of Call, 144 Wn.2d 315, 328, 28 P.3d 709 (2001); State v. Wakefield, 130 Wn.2d 464, 475, 925 P.2d 183 (1996). The defendant must take knowing and voluntary action to set up the error. Call, 144 Wn.2d at 328. The invited error doctrine applies even to purported errors of constitutional magnitude. State v. Heddrick, 166 Wn.2d 898, 909, 215 P.3d 201 (2009). A defendant is "not denied *due process by the state* when such denial results from his own act, nor may the state be required to protect him from himself." State v. Lewis, 15 Wn. App. 172, 177, 548 P.2d 587 (1976) (emphasis added).

Here, at the time that the jury requested to view the transcript, Duque agreed to the use of a jury instruction concerning the function that the document served. The jury was instructed in accordance with this agreed language. By affirmatively participating in the presentation of the transcript to the deliberating jury, Duque invited any error that occurred.

VI

In a pro se statement of additional grounds, Duque asserts two additional errors. Neither is availing. First, Duque contends that his attorney committed misconduct both by choosing not to contact certain individuals who allegedly had relevant information regarding his case and by not calling a certain witness to testify at trial. He is wrong. See State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967) ("[T]he choice of trial tactics, the action to be taken or avoided, and the methodology to be employed must rest in the attorney's judgment."). Next, he contends that he had a right to be offered a plea agreement. Again, he is wrong. State v. Wheeler, 95 Wn.2d 799, 804, 631 P.2d 376 (1981) ("A defendant does not have a constitutional right to plea bargain.").

Affirmed.

We concur:

- 14 -