IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78486-2-I |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL JACOB MILTENBERGER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. – Daniel Miltenberger was arrested for violating a domestic violence no-contact order and for malicious mischief in April 2015. The State charged him with felony violation of a no contact order (VNCO) in July 2016, after which Miltenberger was charged with an unrelated rape and sexually motivated burglary. Miltenberger agreed to postpone his trial on the VNCO charge until after his trial on the rape and burglary charges. After being convicted and sentenced to an indeterminate sentence with a maximum of life in prison for the rape, Miltenberger asked the State to dismiss the VNCO charge. The State declined, claiming it had offered to dismiss that charge only if Miltenberger pleaded guilty to rape and burglary.

Miltenberger filed a motion to dismiss the VNCO charge under CrR 8.3(b), arguing that governmental mismanagement of the case had prejudiced him. The

trial court denied the motion, finding that the State had misrepresented its intentions regarding the VNCO prosecution but finding no detrimental reliance on the promise or any prejudice to Miltenberger. Miltenberger asks this court to review the trial court's denial of his CrR 8.3(b) motion to dismiss. We affirm.

## FACTS

S.M. obtained a one-year domestic violence protection order against Daniel Miltenberger on April 1, 2015. Two weeks later, S.M. and Miltenberger exchanged a series of text messages while S.M. was at work. Throughout the exchanges, Miltenberger grew increasingly angry, accusing S.M. of communicating via text with his then-girlfriend. They met at a motel later that day, at which time Miltenberger attempted to convince S.M. to get out of her car and go inside a motel room with him. When S.M. put her car in reverse, Miltenberger jumped on the car. Miltenberger broke the front driver's side mirror before jumping off. As S.M. drove away, Miltenberger threw something that shattered her back windshield.

S.M. pulled over when she saw a Washington State Patrol trooper. Everett Police Officer John Coats arrived shortly thereafter to assist and arrested Miltenberger for violation of a domestic violence protective order and malicious mischief.

On July 15, 2016, the State charged Miltenberger with felony VNCO. Before the State filed the charges, the assigned prosecutor, Tobin Darrow, offered to reduce the charge to a gross misdemeanor in exchange for a guilty plea, but Miltenberger declined the offer. Miltenberger was arraigned on August 11, 2016.

Three months later, on November 23, 2016, Miltenberger was charged with an unrelated first-degree rape and first-degree burglary. Darrow reached out to

Miltenberger's then-counsel on the VNCO case, Emily Hiskes, to discuss a possible plea on the VNCO charge as a result of these new charges. Darrow informed Hiskes via e-mail that he would be willing to dismiss the VNCO charge in exchange for a guilty plea on the rape and burglary charges. Darrow also recalled making a verbal comment to Hiskes in passing, indicating that it was unlikely that he would prosecute Miltenberger for the VNCO charge if he was convicted of rape and burglary.

In October 2017, Teresa Cox took over the prosecution of the VNCO case, and Jason Schwarz replaced Hiskes as Miltenberger's defense counsel. Cox asked Schwarz if Miltenberger intended to proceed to trial on the VNCO case on the then-scheduled October 20 trial date. Schwarz informed Cox that he understood that "[Darrow] is willing to dismiss if and when Mr. Miltenberger is convicted of Rape 1/Burg 1 w/ FA. If convicted, he will spend the rest of his life in prison." Cox replied, telling Schwarz that "I talked to [Darrow], and yes, that was his plan. So, I'm good with that." They agreed to tentatively continue the VNCO trial date to mid-February.

On January 29, 2018, a jury found Miltenberger guilty of first-degree rape and first-degree burglary with sexual motivation. The sentencing court imposed an indeterminate sentence with a minimum term of 450 months and maximum term of life on the rape charge and an exceptional determinate sentence of 140 months on the burglary charge.

On February 7, 2018, Cox e-mailed Schwarz to tell him that she had spoken with Darrow and learned that he had offered to dismiss the VNCO charge only if Miltenberger had pleaded guilty to the rape and burglary charges. Because

Miltenberger had not pleaded, Cox said she intended to try Miltenberger on the VNCO charge and to charge him with two additional VNCO counts.

On March 1, 2018, Miltenberger moved to dismiss the VNCO charge under CrR 8.3(b).[1]  He asked the trial court to enforce the State's promise to dismiss the VNCO once he was convicted of the more serious felonies.  Miltenberger argued that the State's mismanagement of the case required dismissal because he had waived his right to a speedy trial in the VNCO case based on the belief that the State intended to dismiss that charge.  He contended that he would have negotiated the pending cases differently had he known the State intended to prosecute him for the VNCO charge because a VNCO conviction would impact his ability to obtain extended family visits while serving a life sentence on the rape conviction.

Miltenberger also argued that the State's decision not to dismiss the VNCO charge also impacted the fairness of his trial.  Miltenberger's counsel contended that:

> The State has not conducted a 3.5 hearing yet.  The State got a continuance because of officer delays, prosecutor delay – engagement in another trial.  Had we been able to go to trial at that point at that time when the first trial call occurred, there would have been no 3.5 hearing, which means any statements Mr. Miltenberger had made would not be coming in.

Counsel also contended that after he confirmed his readiness for trial, the State provided a new statement from the victim.

---

[1]  CrR 8.3(b) states: "The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

The State denied the contention that it had provided new discovery to Miltenberger. The State noted that "there is no new discovery on this case. There [are] no new witnesses, no late discovery, as counsel is stating, and there is no Amended Information being sought in this case." It further argued that had Miltenberger been acquitted in the rape case, he would be in the same posture he was in at that time.

In its oral ruling, the trial court found unpersuasive the State's argument that Cox's October 2017 e-mail to Schwarz did not promise a dismissal of the VNCO charge. It concluded that the e-mail was a specific offer that Miltenberger had accepted. The trial court reserved ruling on the issue of whether he had established any actual prejudice.

In its subsequent March 13, 2018 written findings, the trial court reiterated its oral ruling that the October 2017 e-mail constituted an agreement that the VNCO charge would be dismissed "if and when [Miltenberger] is convicted" of the rape and burglary charges. And it found that Miltenberger's counsel had relied on this agreement when agreeing to postpone the trial until the rape and burglary charges were resolved.

The trial court, however, rejected Miltenberger's argument that the change in the State's position regarding dismissal caused any actual prejudice affecting Miltenberger's fair trial rights. It rejected Miltenberger's argument that the delay allowed the State to hold a CrR 3.5 hearing or to obtain a new victim statement. It concluded that Miltenberger had other remedies, such as moving to exclude evidence or to preclude the State from adding new charges, in lieu of dismissal. With regard to any argument that Miltenberger may have pleaded guilty to the rape

and burglary charges to ensure a dismissal of the VNCO case, the court rejected that argument as "speculative at best."

The trial court expressed its concern for the way in which the State had dealt with the case:

> While this Court continues to believe that the weight of the evidence clearly shows that the State led the defense to believe, by both conversation and email, of its intent to dismiss the VNCO upon the defendant's conviction to Rape/Burglary, and remains very troubled by the State's position in this case, the Court cannot find under the law and facts of this case that the defendant has shown detrimental reliance such that he can no longer receive a fair trial on this charge.

It denied Miltenberger's motion to dismiss under CrR 8.3(b) and any motion to enforce the State's offer to dismiss the charge.

On March 28, 2018, a jury found Miltenberger guilty of the VNCO charge and found against him on a domestic violence aggravating factor. Miltenberger was sentenced to 60 months of incarceration to be served concurrently with the indeterminate rape sentence and determinate burglary sentence.

## ANALYSIS

Miltenberger asks this court to reverse the trial court's decision to deny his motion to dismiss under CrR 8.3(b).[2] To be entitled to a dismissal under CrR 8.3(b), a defendant must show by a preponderance of the evidence (1) arbitrary government action or misconduct and (2) actual prejudice to the defendant's right to a fair trial. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Dismissal under CrR 8.3(b) is "an extraordinary remedy available only when there has been prejudice to the rights of the accused which materially affected his or her rights to

---

[2] Miltenberger also argues that in light of State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018), the criminal filing fee and DNA collection fee should be stricken. The State concedes that these fees should be stricken. We accept the State's concession.

a fair trial." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993) (internal quotation marks omitted) (quoting Spokane v. Kruger, 116 Wn.2d 135, 144, 803 P.2d 305 (1991)). "[A] party cannot meet this burden by generally alleging prejudice to his fair trial rights—a showing of actual prejudice is required." State v. Salgado-Mendoza, 189 Wn.2d 420, 431-32, 403 P.3d 45.

We review a trial court's decision on a motion to dismiss under CrR 8.3(b) for manifest abuse of discretion. Blackwell, 120 Wn.2d at 830. "A discretionary decision is manifestly unreasonable or based on untenable grounds if it results from applying the wrong legal standard or is unsupported by the record." Salgado-Mendoza, 189 Wn.2d at 427 (internal quotation marks omitted) (quoting State v. Rafay, 167 Wn.2d 644, 655, 222 P.3d 86 (2009)).

Miltenberger does not contend that the trial court applied the incorrect legal standard. Instead, he argues that the trial court erred in finding that he was not prejudiced by the State's October 2017 email in which it stated its intention to dismiss the VNCO case. He contends that he relied, to his detriment, on the promise that the case would be dismissed, and the trial court erred in concluding otherwise.

We must therefore decide whether the trial court's findings are supported by substantial evidence and whether the findings support its legal conclusions. State v. Budge, 125 Wn. App. 341, 345-46, 104 P.3d 714 (2005). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." Id. at 346 (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).

Miltenberger contends that he demonstrated prejudice by showing that he relied on the State's offer of dismissal to his detriment in two different ways. First, he argues that he agreed to continue his VNCO trial for over a year pending resolution of the rape and burglary trial, giving the State additional time to gather evidence against him. Second, he maintains that he declined the State's offer in both the VNCO and rape cases because he was motivated to find a way to maintain extended family visits if convicted of rape and sentenced to life in prison. The record, however, does not support either argument.

With regard to the agreed trial continuances, the trial court found that Miltenberger relied on an email dated October 2017, more than a year after he was charged. By that point, Miltenberger had already agreed to postpone his VNCO trial while awaiting the conclusion of the rape and burglary case. There is nothing in the record to establish that his waiver of his speedy trial rights between the date he was charged with rape and burglary in November 2016 and October 2017 was based on the agreement reached in October 2017.

While Miltenberger did agree to continue his VNCO trial date in October 2017 in reliance on Cox's October 2017 email, the record does not support his contention that this delay allowed the State to gather new evidence. Miltenberger argues that the State was able to request a CrR 3.5 hearing and obtain a court order allowing the admission of exculpatory statements. But the record does not reveal any causal connection between the trial delays and the timing of the CrR 3.5 hearing. CrR 3.5(a) states, in relevant part:

> (a) Requirement for and Time of Hearing. When a statement of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not

previously held, for the purpose of determining whether the statement is admissible.

The record before this court lacks an order setting a deadline for the CrR 3.5 hearing in this case. We thus have no basis on which to conclude that the trial delay between October 2017 and March 2018 impacted the scheduling of this hearing in any way.

Moreover, the trial court signaled to defense counsel that a remedy short of dismissal might be available, including the exclusion of evidence. There is no indication that Miltenberger objected to the trial court conducting a CrR 3.5 hearing on the first day of trial. In fact, Miltenberger's counsel explicitly told the court that he did not object to the occurrence of a CrR 3.5 hearing but that he objected to the State's proposed dates for the hearing because he was going to be out of the country. Counsel did not object to the timeliness of the State's request for a CrR 3.5 hearing once he returned to town.

And Miltenberger does not contend that he was surprised by anything that occurred during the CrR 3.5 hearing. The State called only one witness, Officer Coats, who stated that before he read Miltenberger his Miranda[3] rights, Miltenberger told him that he arrived at the hotel and saw S.M.'s car in the parking lot and that S.M. drove her car towards him, forcing him to jump on the vehicle's hood to avoid getting hit, with the driver's side window somehow getting broken. After being informed of his Miranda rights, Miltenberger agreed to speak to Coats and told him that he and S.M. had been communicating via text because Miltenberger wanted to find out why one of S.M.'s friends had contacted him at

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3:00 that morning. The trial court admitted Miltenberger's post-<u>Miranda</u> statements but excluded any of Miltenberger's pre-<u>Miranda</u> statements. There is nothing in this record to suggest that Miltenberger or his counsel was unprepared to address the exculpatory statements admitted by the court during his trial.

With regard to his motivations for rejecting plea offers, we have no evidence in the record that the State made any plea offers to Miltenberger other than the initial offer to dismiss the VNCO charge if he pleaded guilty to rape and burglary. While defense counsel argued that the State's change in position regarding dismissal "could have" affected Miltenberger's plea negotiating position, this argument is not evidence.

The record shows that Miltenberger did rely on the State's expressed intent to dismiss the VNCO charge between October 2017 and February 2018, when he learned that the State had changed its position and intended to proceed to trial. But the record does not show he relied on this promise to his detriment during that five month period.

The State's agreement to dismiss Miltenberger's VNCO charge was not technically a plea offer because Miltenberger was not required to admit guilt to any criminal offense or to forfeit any legal rights as a part of the agreement. But the cases relating to when the State may revoke a plea offer provide some guidance here. "[A]bsent some detrimental reliance by the defendant, the State may withdraw from any plea agreement prior to the actual entry of a guilty plea." <u>State v. Wheeler</u>, 95 Wn.2d 799, 803, 631 P.2d 376 (1981). "The right to specific performance of a plea proposal, if it can be called a right, is not rooted in the 'traditions and conscience of our people.'" <u>Id.</u> at 804. Although a defendant must

be treated fairly, the right to a specific plea offer does not rise to constitutional magnitude. Id. Our courts have reasoned that "enforcing bargains made before the plea would inhibit the prosecutor's use of plea bargaining; and that the defendant, because she or he can still get a jury trial, has an adequate remedy for the State's revocation." Id. at 803.

In the pre-guilty plea setting, a defendant is entitled to compel specific performance of an offer by the State only if the defendant establishes detrimental reliance on the offer. State v. Bogart, 57 Wn. App. 353, 357, 788 P.2d 14 (1990). The defendant "must establish he relied on the bargain in such a way that a fair trial is no longer possible." Id. Miltenberger made no such showing here.

Miltenberger's prejudice arguments have nothing to do with the fairness of his VNCO trial. Had Miltenberger been acquitted of the rape and burglary charges, he would have been in the same position he was in when he went to trial on the VNCO charge. He had not given up any procedural or substantive rights affecting the second trial. This is not a case in which the State added last-minute charges or delayed the discovery process, requiring the defendant to choose between his right to a speedy trial and his right to effective counsel. See e.g. State v. Michielli, 132 Wn.2d 229, 937 P.2d 587 (1997) (Supreme Court affirmed CrR 8.3(b) dismissal of charges after the State brought new charges days before trial and defendant was forced to choose between a speedy trial and effective representation); State v. Teems, 89 Wn. App. 385, 948 P.2d 1336 (1997) (CrR 8.3(b) dismissal of charges was proper after trial notice was served to withdrawn counsel, and new counsel had 12 days to prepare for trial, forcing defendant to choose between a speedy trial and effective representation).

Instead, this record shows that Miltenberger's counsel was prepared to go to trial on February 16, 2018. While the State asked for a continuance due to prosecutor unavailability, there is no indication that defense counsel needed a continuance to prepare for any newly produced evidence or newly alleged crimes.

Thus, the trial court correctly concluded that Miltenberger failed to show that he detrimentally relied on counsel's statement that the VNCO charge would be dismissed upon a conviction of the rape and burglary. We conclude that the trial court did not abuse its discretion in denying Miltenberger's CrR 8.3(b) motion to dismiss the VNCO charge.

We affirm Miltenberger's conviction but remand to allow the trial court to strike the DNA fee and criminal filing fee from the judgment and sentence.

Andrus, A.C.J.

WE CONCUR: